### No. 9211.

MRS. JANE BELL VS. B. W. TAYLOR AND J. D. HOUSTON, TAX COLLECTOR.

The only duty imposed on the tax collector which is declared by section 1 of Act 98 of 1882, to be "mandatory and imperative," is the duty "to proceed immediately after the promulgation of this act to prepare the necessary records." The following words " and (he) shall, within four months after said promulgation advertise for sale, etc.," is grammatically independent of the declaration of "mandatory and imperative duty," and is, therefore, a separate and merely directory provision.

This construction is in harmony with the provisions in section 11 of the act, "that if any tax collector shall, *after* four months from the promulgation of this act, fail to advertise, etc.," which obviously contemplates advertisements *after* the four months, and excludes the theory that the power to advertise expired with that period.

The provision being directory merely, failure to advertise within the four months does not, nesessarily, involve the nullity of advertisements subsequently made, in absence of any proof of culpable delay,

The description of the property sold in this case, however, as contained in the advertisement, does not comply with the requirements of section 3 of act 98 of 1882 and section 20 of act 96 of 1877 and the sale is, therefore, null.

APPEAL from the Civil District Court for the Parish of Orleans. Monroe, J.

_B. R. Forman_ for Plaintiff and Appellee.

_T. Gilmore_ and _Sons_ and _Blanc_ and _Butler_ contra.

The opinion of the Court was delivered by

FENNER, J.   This is a suit to annul an adjudication of certain immovable property situated in this city to the defendant, B. W. Taylor, made by the defendant tax-collector, by virtue of proceedings under Act 98 of 1882, entitled: " An act to enforce the miscellaneous ordinances of the Constitution for the relief of delinquent tax-payers."

Various grounds of nullity are assigned and the prayer is that the sale be annulled and that the defendants be perpetually enjoined from disturbing plaintiff in the possession of her property.

I.

The ground upon which the judge _a quo_ sustained plaintiff's action was that the authority to sell conferred by the Act 98 of 1882, expired in four months after the promulgation of the act, and that the advertisement and sale having taken place long after the expiration of that period, the sale was without authority of law and null and void.

The question is one of vast public moment and we will dispose of it at the threshold of the case.

It must be admitted that, in framing one of the most important laws ever placed upon the statute book, the legislature, by bad grammar, ill construction of sentences and inconsistent expressions in different parts of the same act, has left its meaning veiled in such obscurity that the resources of judicial interpretation are severely taxed to discover and declare it with any approach to certainty.

The following is the first section :

Section 1, etc.   " That it is hereby made the mandatory and imperative duty of each tax-collector in the city of New Orleans, and each sheriff and ex-officio tax-collector throughout the State, to proceed immediately after the promulgation of this act to prepare the necessary records, and shall within four months after said promulgation, advertise for sale, except as hereafter provided, all property which has heretofore been forfeited to the State of Louisiana, or to any parish for any unpaid taxes, and all property which has heretofore

been sold to the State of Louisiana for unpaid taxes or licenses, and all property upon which any taxes due to the State of Louisiana, or to any parish, prior to January 1, 1880, remain unpaid or unsettled by partial payment and acknowledgment or confession of judgment."

The question arising under this language is, as to the extent of the "mandatory and imperative duty" described.

The statute says "it is hereby made the mandatory and imperative duty of the tax-collector to proceed, immediately after the promulgation of this act, to prepare the necessary records." At this point the statute stops in the enumeration of duties, which can, by any grammatical link, be connected with the declaration that it is "made the mandatory and imperative duty of the tax-collector" to do, etc. Had the statute proceeded in this wise: "And, within four months after said promulgation, to advertise for sale, etc.," the meaning would have been clear, and the duty to advertise within four months would have been unequivocally declared to be "mandatory and imperative." But it will be observed that, after the words, "to prepare the necessary records," the sentence changes form, and breaking off the enumeration of things which it is made "the mandatory and imperative duty" of the collector to do, proceeds with the independent direction, "and shall, within four months after said promulgation, advertise for sale, etc." It is obviously impossible to control or qualify this simple direction by the former declaration of "mandatory and imperative duty." The subject of the verb "shall advertise," is plainly he or they understood, and that part of the phrase is a mere directory provision that the tax-collector "shall, within four months, advertise for sale, etc."

We will not pursue this verbal and grammatical criticism further. The construction we have adopted is enforced by the language used in the eleventh section of the act, which declares: "That if any tax-collector shall, *after four months from the promulgation of this act*, fail to advertise, etc., he and his sureties *in solido* shall become personally liable, etc."

This evidently contemplates advertisements *after* the four months, and is inconsistent with the theory that the advertisements were to be made *within* four months on pain of nullity.

But our views are still more powerfully enforced by a consideration of the absurd consequences to which plaintiff's theory would lead. We think no one familiar with notorious and public facts, as to the confusion into which the tax records of the State had fallen, the loss of

many important books connected therewith, and the immense number of delinquent tax claims for numerous years as illustrated by the enormous lists published during months under this act, could suppose it possible that the tax-collector could, by any effort of industry, have prepared the necessary records, and have made up and published the prescribed advertisements within four months after the promulgation of the act.

Yet plaintiff's theory requires us to believe, not only that the performance of this impossibility was imposed on the tax-collector, but, that in case of his failure to perform it, he and his sureties were to become personally liable for "the entire amount of all the taxes, licenses, interest, expenses and costs due January 1, 1880," aggregating several millions of dollars; and, also that the district attorneys of the State were to bring suit for the enforcement of such liability, under penalty in case of failure, of having it transferred to their own shoulders. It is impossible to impute such intention to the legislature, and had it been supposed to exist and to be capable of enforcement, we should have witnessed a scramble of sheriffs and tax-collectors to escape from those offices far surpassing that usually exhibited in running after them, while their frightened sureties would have clamored for release from such perilous bonds.

We do not disguise the difficulty of making effective many of the provisions of this act; but, it is sufficient to say that the only duty expressly made mandatory by the act is that, "to proceed immediately after the promulgation of this act, to prepare the necessary records."

The other provision that the tax-collector "shall, within four months after said promulgation, advertise for sale, etc.," is, by its terms, and in its essence, directory merely, and, as such, subject to the general rule, that when a statute specifies a time within which a public officer is to perform an official act, it is merely directory as to the time within which the act is to be done, and a failure to do so within that time will not prevent its being done afterwards, provided no one's rights be thereby lost or materially affected. Wilson vs. Bank, 3 Ann. 196; Sedgwick Stat. Construction, p. 316.

We, therefore, think that this ground of plaintiff's action is not supported.

II.

There are various objections urged to the constitutionality of act 98 of 1882, besides pleas of prescription of the tax and several objections to the mode of proceeding.

The conclusion reached by us on one of the latter points obviates the necessity of passing on the others, and, we should have passed by the one which we have just determined had it not been the sole ground upon which the judgment of the lower court was based and one involving such urgent public interests.

The point to which we refer is the insufficiency of the description of the property in the assessment and in the advertisement of the property.

The third section of Act 98 of 1882, provides: " That all such property shall be advertised by the description contained on the assessment rolls, if that be sufficient to identify and deliver the property or if the tax-collector or *ex-officio* tax-collector thinks such description insufficient, it is made his duty to advertise the property by a correct and sufficient description."

The sale involved in this case, was made for a tax of 1878, and the assessment is governed by Section 20 of Act 96 of 1877, which declares that, in absence of return made by the tax-payer, " in all cities, towns or villages, it shall be the duty of the assessor to designate the number of the lot according to the plan of such cities, towns or villages, or according to the plot or plan of the squares, *designating by what particular plot or plan*," and he is required to give " in all cases, the dimensions."

In this case, the title of plaintiff duly recorded in 1875, described the property then bought by her as " two lots of ground, in the fourth district, bounded by Jackson, Magazine, Live Oak and Josephine streets, designated by lots Nos. 1 and 2, and part of lot 3," measuring about 76 feet front on Jackson by 127 feet in depth. In May, 1878, she sold a part of the ground and had a new plan made, by which she was left the owner of a lot designated on that plan as lot B, being the middle portions of the original three lots, and measuring 61 feet, 3 inches on Magazine street, by a depth of 76 feet, 3 inches, 6 lines.

The advertisement describes the property as, " two certain lots of ground in the square bounded by Magazine, Constance, Jackson and Josephine streets, designated as lots Nos. 1, 2 and 13 in the square No. 135; said lots measuring together 63 feet, 6 inches front on Magazine, by a depth of 74 feet, 9 inches, six lines."

It will thus be seen, that neither in dimensions nor in numbers, does it correspond with the property owned by Mrs. Bell. There is no designation of any particular plot or plan according to which the numbers were given, nor whether it was the plan of the city, or the

plot or plan of the square; and conceding that, if it was the city plan, such designation might have been unnecessary; no proof is made that there was such a city plan or that the description was according thereto, although the sufficiency of the description as to the numbers and measurement was expressly put at issue.

In absence, at least of such proof, we are confronted with a case where the assessment does not show upon its face, that the requirements of the law have been complied with and the *prima facie* defect is not even cured by proof of actual compliance.

It was long since held by this Court that in tax sales, "it is necessary, under pain of nullity, that the estate sought to be divested should be described so that it may be identified;" and that the description must show " on its face, or by reference to accessible public documents what is taken from the owner and transferred to the purchaser." Wilson vs. Marshall, 10 Ann. 327; Jacques vs. Kupman, 6 Ann. 542; Wills vs. Auch, 8 Ann. 19.

Such requirement is expressly embodied in the act of 1877 above referred to.

We refrain from holding, as already intimated, that if the assessment was made according to an official city plan, the failure to refer to it would, by itself, constitute an incurable nullity; but, in absence of proof that it was so made and that the description by numbers conforms thereto, the apparent defect is certainly fatal, especially when taken in connection with the difference in dimensions.

The assessment and the advertisement, under the proof in this case, are insufficient to sustain the title of defendant, and the *prima facie* presumption in favor of its validity cannot avail to save it.

Without any prayer to that effect in the pleadings, and without even a motion for amendment of the judgment in this Court, defendant, Taylor, asks that provision should be made in the judgment for return of the tax paid by him. This, of course, is impossible. His right to return of the taxes paid by him to the extent that the same enured to plaintiff's benefit is unquestionable and will not be precluded by this decree.

Judgment affirmed.

---

### CONCURRING OPINION.

BERMUDEZ, C. J, The judgment appealed from should be.affirmed, *solely* for the cogent reasons assigned by the District Judge.

I therefor concur in the decree.

TODD, J., concurs in this opinion.